**BLUE & GOLD STAMPS—U–SAVE PREMIUM CO., a California corporation, Plaintiff,**

v.

**John G. SOBIESKI, Commissioner of Corporations of the State of California, Defendant.**

No. 2–61.

United States District Court
S. D. California,
Central Division.

Jan. 4, 1961.

William Douglas Sellers, Pasadena, Cal., for plaintiff.

No appearance for defendant.

YANKWICH, District Judge.

Before me is a request that I issue, ex parte, a temporary restraining order restraining John G. Sobieski, Commissioner of Corporations of the State of California, from considering "abandoned" the application of the plaintiff for a license to carry on its trading stamp business in the State of California pending the hearing on the question of the issuance of a preliminary injunction sought by the plaintiff. I am also asked to convene a three-judge statutory court to hear the preliminary and permanent injunction against the Commissioner of Corporations' enforcement of Section 17750 et seq., of the Business and Professions Code of California, effective July 1, 1960.

To support its claim, the plaintiff has filed a complaint against the Commissioner of Corporations. From it and the affidavit in support of the motions the following facts may be gathered: The plaintiff is a corporation which has engaged in issuing and redeeming trading stamps in California since October 10, 1938, during which period it has sold over $7,000,000 in trading stamps and has redeemed every stamp returned for redemption.

On June 29, 1960, the plaintiff filed with the defendant a petition for a license to carry on the business of issuing and redeeming trading stamps as required by the new statute. The petition was accompanied by the required filing fee of $1,000, but was not accompanied by a bond as required by Section 17773 of the California Business and Professions Code.

After the filing of the application the division of Corporations repeatedly called the attention of the plaintiff to the fact that no bond had been filed and that the application would not be given consideration until the bond had been posted. Finally, on December 22, 1960, the plaintiff was notified that unless the bond was filed within 15 days after the date of the letter (i. e. by January 6, 1961) the Commissioner

"will have no other alternative except to abandon the application."

It is the contention of the plaintiff that the provision as to bond is arbitrary, discriminatory and unconstitutional, and deprives them of due process of law under the Fourteenth Amendment of the Constitution of the United States. More specifically it is argued that the exemption from the bond requirement of concerns which issue and redeem their own stamps is unconstitutional.

Before considering the matter it is well to advert to the general proposition that in order to invoke the jurisdiction of this Court under Sections 2281, 2283 and 2284 of Title 28 U.S.C.A., the complaint, on its face, must show the existence of a substantial federal question. If it does, the presence of a State question does not stand in the way of exercising jurisdiction. Florida Lime and Avocado Growers, Inc. v. Jacobsen, 1960, 362 U.S. 73, 83–84, 80 S.Ct. 568, 4 L.Ed. 2d 568. However, when the Complaint

fails to show the presence of a substantial federal question, the Judge to whom the petition is addressed may decline to grant relief or convene a three-judge court. Ex parte Poresky, 1933, 290 U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152; Oklahoma Gas & Electric Co. v. Oklahoma Packing Co., 1934, 292 U.S. 386, 390–392, 54 S.Ct. 732, 78 L.Ed. 1318; California Water Service Co. v. City of Redding, 1938, 304 U.S. 252, 255–256, 58 S.Ct. 865, 82 L.Ed. 1323; Eastern States Petroleum Corp. v. Rogers, 1959, 105 U.S.App. D.C. 219, 265 F.2d 593 (per Prettyman, Chief Judge); Carrigan v. Sunland-Tujunga Telephone Co., 9 Cir., 1959, 263 F.2d 568, 571–573; Shiver v. Gray, 5 Cir., 1960, 276 F.2d 568, 570. And see the writer's opinion in Wylie v. State Board of Equalization, D.C.Cal.1937, 21 F.Supp. 604, 606.

The California Trading Stamp Act of 1960 attempts to regulate, through a licensing and bonding scheme, the sale of trading stamps and the conditions for their redemption. There are State decisions, some of which are cited in the memorandum of authorities, which deny to the State the right to regulate trading stamps. See, 87 C.J.S. Trading Stamps and Coupons § 4, pages 879–880; People ex rel. Atty. Gen. v. Sperry & Hutchinson Co., 1917, 197 Mich. 532, 164 N.W. 503, L.R.A.1918A, 797; State of Utah v. Holtgreve, 1921, 58 Utah 563, 200 P. 894, 26 A.L.R. 696; People ex rel. Appel v. Zimmerman, 1905, 102 App.Div. 103, 92 N.Y. S. 497, an early case often cited by other state courts. However, the Supreme Court of the United States, in a group of decisions involving statutes in Louisiana and Washington, has held it within the power of State legislatures to make regulations and classifications of the type here involved. Rast v. Van Deman & Lewis Co., 1916, 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679; Tanner v. Little, 1916, 240 U.S. 369, 36 S.Ct. 379, 60 L.Ed. 691; Pitney v. State of Washington, 1916, 240 U.S. 387, 36 S.Ct. 385, 60 L.Ed. 703.

The gist of the ruling in these cases may be summed up by the following quotation from Rast v. Van Deman & Lewis Co., supra, 240 U.S. at page 357, 36 S.Ct. at page 374:

"It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. * * * It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety. * * * It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury but obstacles to a greater public welfare."

This case has been cited repeatedly to reject the contention that regulations and classifications of trading stamp companies of the type contained in the California Act are a violation of the Fourteenth Amendment. See, Mercedes Realty Inc. v. Standard Homestead Association, 1944, 323 U.S. 666, 65 S.Ct. 53, 89 L.Ed. 542; United States v. Burnison, 1950, 339 U.S. 87, 95, footnote 18, 70 S. Ct. 503, 94 L.Ed. 675; Allied Stores of Ohio, Inc. v. Bowers, 1959, 358 U.S. 522, 528, 79 S.Ct. 437, 3 L.Ed.2d 480.

In a more recent case arising in Oklahoma, in determining that the Oklahoma Unfair Sales Act, 15 O.S.1951 § 598.1 et seq., was not unconstitutional when applied to merchants who did not give trading stamps, the Court specifically referred to and adopted the teaching of these decisions, in the following language:

"This Court in other contexts has upheld, against a challenge based on the Fourteenth Amendment, state tax laws which discriminated against the use of trading stamps. Rast v. Van Deman & Lewis Co., 240 U.S. 342 [36 S.Ct. 370, 60 L.Ed. 679]; Tanner v. Little, 240 U.S. 369 [36 S.Ct. 379, 60 L.Ed. 691]; Pitney v. [State of] Washington, 240 U.S.

387 [36 S.Ct. 385, 60 L.Ed. 703]." Safeway Stores, Inc. v. Oklahoma Retail Grocers Association, Inc., 1959, 360 U.S. 334, 339, footnote 4, 79 S.Ct. 1196, 1200, 3 L.Ed.2d 1280.

■■ The California statute groups the various businesses engaged in the sale of stamps according to their income, graduating the bond to conform to such income. We see nothing arbitrary in making a bond conform to income. Nor does the differentiation between concerns which issue their own trading stamps and those which use the stamps of trading companies, like the plaintiff, give rise to constitutional infirmity. In one of the cases above cited, Tanner v. Little, supra, in which it was urged that a Washington statute, which made the use of trading stamps a misdemeanor, was unconstitutional because it did not prohibit discounts by merchants not using stamps, the Supreme Court gave this answer:

"The system, therefore, has features different from the ordinary transactions of trade which have their impulse, as we have said, in immediate and definite desires having definite and measurable results. There may be in them at times reckless buying, but it is not provoked or systematized by the seller.

"Complainants charge that the tax of the statute is not upon the business, but upon its incidents. The separation is artificial. It is the incidents which give character to the business, affecting it with evil, it was thought, provoking therefore against it the power of the State and taking away from it the immunity it else might have.

"It is unimportant what the incidents may be called, whether a method of advertising, discount giving or profit sharing. Their significance is not in their designations but in their influence upon the public welfare. And of this the judgment of the legislature must prevail, though it be controverted and opposed by arguments of strength." 240 U.S. at page 385, 36 S.Ct. at page 384.

The principle has been applied consistently. In a case in which the court sustained a municipal licensing fee applying to *commercial* warehouses only and not to *private* warehouses the court stated that "the selection" is not "barred by the fourteenth amendment". Independent Warehouses, Inc. v. Scheele, 1947, 331 U.S. 70, 86, 67 S.Ct. 1062, 1071, 91 L.Ed. 1346.

■ Constitutional doctrine permits selectivity in regulatory statutes, state or federal. See the writer's opinion in Brown v. Parker, D.C.1941, 39 F.Supp. 895, the conclusions in which were approved by the Supreme Court in Parker v. Brown, 1943, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315.

■■ The fact that a member of a group which is regulated may suffer losses not incurred by others does not invalidate a proper regulation. As stated in Bowles v. Willingham, 1944, 321 U.S. 503, 518, 64 S.Ct. 641, 649, 88 L.Ed. 892:

"A member of the class which is regulated may suffer economic losses not shared by others. His property may lose utility and depreciate in value as a consequence of regulation. But that has never been a barrier to the exercise of a police power. * * * And the restraints imposed on the national government in this regard by the Fifth Amendment *are no greater than those imposed on the States by the Fourteenth.*" (Emphasis added.)

Mr. Justice Holmes gave expression to this principle in a statement which has become classic:

"A lack of abstract symmetry does not matter. The question is a practical one dependant upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may

do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 80, 81 [31 S.Ct. 337, 55 L.Ed. 369, 368]. The state 'may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.' " Patsone v. Com. of Pennsylvania, 1914, 232 U.S. 138, 144, 34 S.Ct. 281, 282, 58 L.Ed. 539,

As a result of the application of these principles, it is accepted constitutional doctrine that equal protection does not require identity of treatment, if there be reasonable ground for difference of policy. Walters v. City of St. Louis, 1954, 347 U.S. 231, 237–238, 74 S.Ct. 505, 98 L.Ed. 660; Allied Stores of Ohio, Inc. v. Bowers, 1959, 358 U.S. 522, 527–529, 79 S.Ct. 437, 3 L.Ed.2d 480.

If, as these cases show, the type of regulation here involved does not involve a substantial federal question, the fact that the statute may, as alleged in the Complaint, contravene the State Constitution of California is not sufficient to enable us to exercise jurisdiction.

The motion for temporary restraining order is denied and the court declines to convene a three-judge statutory court for hearing further proceedings. The affidavit on file and a communication addressed to this Court by counsel for the plaintiff stress the urgency of the matter because of the proposed action to be taken by the Commissioner on Friday, January 6, 1961. In view of this, and in order that the plaintiff may be free to seek relief from the Court of Appeals for the Ninth Circuit or in the State courts before that date, the Court, in accordance with the precedent sanctioned by the Court of Appeals in Carrigan v. Sunland-Tujunga Telephone Co., 1959, 263 F.2d 568, will, on its own motion, dismiss the action.

Formal judgment of dismissal to follow.