No. 34,789

THE STATE OF KANSAS, *Appellant*, v. V. L. BUCHMAN, *Appellee*.

(101 P. 2d 885)

Opinion filed May 4, 1940.

*Jay S. Parker*, attorney general, *Tom Harley*, county attorney, *Robert H. Nelson, Harold A. Zelinkoff, Grey L. Dresie, J. Ashford Manka* and *Dean L. Lachenmyer*, deputy county attorneys, for the appellant.

*James B. Nash* and *Robert R. Hasty*, both of Wichita, for the appellee.

*Tom Harley, Jr.*, of Wichita, as *amicus curiae*.

The opinion of the court was delivered by

HARVEY, J.: This was a prosecution for the violation of G. S. 1935, 19-2210, commonly known as the trading-stamp act. The appeal is by the state on a question reserved on the ruling and judgment of the trial court that defendant had not been charged with the commission of a crime in the information, and that under the information and stipulated facts defendant should be discharged.

The statute in question reads:

"Every person, firm or corporation who shall use, and every person, firm or corporation who shall furnish to any other person, firm or corporation to use, in, with, or for the sale of any goods, wares or merchandise, any stamps, coupons, tickets, certificates, cards, or other similar devices, which shall entitle the purchaser receiving the same with such sale of goods, wares or merchandise to procure from any person, firm, or corporation any goods, wares, or merchandise, free of charge, or for less than the retail market price thereof, upon the production of any number of said stamps, coupons, tickets, certificates, cards, or other similar devices, shall before so furnishing, selling, or using the same, obtain a license from the county clerk of each county wherein such furnishing, selling or using shall take place, for each and every store or place of business in that county, owned or conducted by such person, firm, or corporation from which such furnishing or selling, or in which such using shall take place: *Provided, however,* That the provisions of this sec-

tion shall not apply to the furnishing or issuance of any stamps, coupons, tickets, certificates, cards, or other similar devices, redeemable at their face value, in cash or merchandise from the general stock of said merchant at regular retail prices at the option of the holder thereof."

The next section requires one, before transacting such business, to obtain a license, and provides the amount of fee to be paid. A later section makes the violation of the statute a misdemeanor and fixes penalties.

The pertinent portions of the information, filed November 17, 1939, may be summarized as follows: That defendant is doing a personal loan business in Wichita; that on a date named, and under the terms of a printed and written contract, which was set out, he sold to a named borrower certain coupons or trading stamps, designated as Vee Bee profit-sharing certificates, of the face value of $12.60, without having first obtained a license provided by the statute above mentioned. The information contained other usual and necessary allegations. By the written receipt and contract set out the borrower acknowledged the receipt from defendant of $30, in cash, and the purchase for $12 of the book of Vee Bee profit-sharing certificates, which are acceptable as cash at their face value at from five to fifteen percent of the purchase price of foods, clothing, furniture, or general merchandise bought from stores listed by defendant as accepting such certificates as such part payment of merchandise. The purchaser of the certificates agreed to use the certificates in that way, and also agreed he did not then have any of such certificates previously purchased from defendant, and that the written agreement and the note given at the same time to defendant by the purchaser of the certificates contained the entire contract between them. Also, the book of the certificates was set out.

Obviously, one purpose of the prosecution was the desire both of the state and defendant to have an adjudication upon the question of whether this method of doing business violates the statute, G. S. 1935, 19-2210 to 19-2214. On the filing of the information defendant, by his attorney, waived the issuance and service of a warrant and entered his voluntary appearance. Thereafter counsel for the state and for defendant entered into a written stipulation of facts, which may be summarized as follows:

Defendant is engaged in the small loan business in Wichita, loaning sums of from $10 to $40, but requires the borrower at the time

the loan is made to purchase from him Vee Bee profit-sharing certificates in a sum depending on the size of the loan, and requires the transaction to be evidenced by a note, and a receipt and contract such as the one set out in the information; that defendant's only business is the loan business, and he never has been engaged in the sale of goods, wares or merchandise in Wichita, except as stated in the stipulation; that on the date, and to the person charged in the information, defendant made a loan of $30 in cash and required the borrower to purchase for $12 a book of the Vee Bee certificates of the face value of $12.60, for which he took the borrower's note for $42, payable in twelve equal installments of $3.50 per week, without interest until maturity, but thereafter to bear interest at ten percent per annum. A copy of the note, receipt and contract and of the book of Vee Bee certificates were attached to the stipulation, the latter two instruments being the same as those embodied in the information. It was stipulated the certificates could be used at any one of a number of stores in Wichita, and a list of them was set out, in payment of ten percent of the regular retail purchase price of goods sold at the stores. It was stipulated that defendant had no interest in these various stores or places of business, except his agreement with them about redeeming certificates received by the merchant as ten percent of the purchase price of goods purchased by the persons to whom defendant had sold the certificates. Defendant had a contract with each of these merchants, in which the terms under which defendant redeemed the certificates from the merchants varied as defendant and the individual merchant might agree; for example, with one of the merchants defendant redeemed on a stated day each week all certificates received by the merchant within the previous week at their face value in cash; to three of the merchants he paid $5 per month, and to one $10 per month, for all certificates received by such merchants, whether the face value of such certificates was more or less than the sum paid; while other of the listed merchants regarded the fact that defendant referred his customers to them as advertising of sufficient value that they accepted the certificates without charge to defendant. It was further stipulated that the certificates were not redeemable by anyone at their face value in cash or merchandise at regular retail prices at the option of the holder thereof, and that defendant had not obtained a license and paid the license fee required by statute (G. S. 1935, 19-2211).

When the case was presented to the trial court counsel agreed that the matter should be submitted to the court for determination, without a jury, upon the stipulation of facts. The case was argued to the court and briefs of counsel submitted, with the result, as previously stated, that the court held the information did not state an offense, and that under the information and facts stipulated the defendant should be discharged.

We are first confronted with the contention of appellee that the appeal should be dismissed for the reason that there had been a trial of the case to the court upon the merits, and that defendant had been discharged. We think the point is not well taken. The facts stipulated embody all the pertinent allegations of the information and contain but little more, if anything, than might have been in a bill of particulars, sometimes used to particularize and enlarge upon the allegations of an information. More than that, the trial court held the information bad, and from that the state had a right to reserve the question of its validity and to appeal. (G. S. 1935, 62-1703.) Appellee further contends that the appeal should be dismissed because there was no actual reservation by the state of the questions appealed from. The record does not sustain this contention.

It is obvious, indeed is frankly stated, that defendant, whose primary business is making small loans, devised this plan to circumvent our usury laws (G. S. 1935, 41-103), as interpreted by this court. (*State, ex rel., v. Basham,* 146 Kan. 181, 70 P. 2d 24.) We are not called upon in this case to determine whether he has accomplished that purpose, and we do not decide that question. The question is whether, in his effort to circumvent one set of statutes, he has run afoul of another.

Our so-called trading-stamp act (G. S. 1935, 19-2210 to 19-2214) was enacted in 1917 (Laws 1917, ch. 331). It was designed to prevent a recognized, existing evil in trade practices. Promptly, actions were brought to test its validity and to determine its application to particular parties or transactions. (*State v. Wilson,* 101 Kan. 789, 168 Pac. 679; *State v. Mercantile Co.,* 103 Kan. 733, 176 Pac. 321.) The statute was held valid, and its application to the parties before the court was determined.

Under the facts charged in the information, and conceded in the stipulation, defendant, within the language of the statute (G. S.

1935, 19-2210), is a person who furnishes to others coupons or certificates to be used by them in purchase of merchandise at less than the retail price. It is charged in the information, and conceded by the stipulation, that defendant does not come within any of the exceptions specified in the statutes, and that he had not applied for and obtained the license required by the statute of one who engages in the trading-stamp business.

In support of the judgment of the trial court appellee's principal contention is that he is not within the purview of this statute because his business is loaning money. It is argued he is not engaged in the mercantile business. It may be conceded that he is not directly so engaged, but the use of these certificates, valuable only when used for the purchase of goods from merchants listed by him, and his agreements with the several merchants as to the manner in which he redeems the certificates, all of which is a part of his business, hardly supports the broad claim that he has no interest in and is not in any manner engaged in the mercantile business. It is argued that the only thing which can be said to be sold by him to a borrower is the cash or money which he loans them, and this cash or money is not a commodity to be sold, but is a measure of value. Enlightening discussions and conclusions of economists and others on that subject are contained in the briefs. Fortunately, we need not decide this much-controverted question. The facts are, as charged in the information and conceded in the stipulation, that defendant sells to persons to whom he loans money certain certificates, which can be used by them only with merchants designated by defendant, in the purchase of merchandise for less than its retail price. We do not regard the questions of whether he is otherwise engaged in the mercantile business, or whether cash or money is a commodity which can be sold, as being questions determinative of the issue before the court. In fact, the very contention relied upon by appellee in this case was decided adversely to him in *State v. Mercantile Co.*, 103 Kan. 733, 176 Pac. 321. The opinion in that case was upon three cases, consolidated in the supreme court, in which three defendants had been arrested for the violation of this statute. One of them, The Sperry & Hutchinson Company, manufactured and sold trading stamps. Another one, The Surety Coupon Company, manufactured and sold coupons. The book of certificates included in the information in this case

states on its face that it is copyrighted by defendant, from which it may be presumed that it is printed by him, or with his authority. He stands in this case very much in the position of The Sperry & Hutchinson Company and The Surety Coupon Company in the case above mentioned. Respecting them the court held:

"A trading-stamp company or a trading-coupon company which is not engaged in mercantile business on its own account, but which furnishes trading stamps or coupons for the use of merchants in dealing with their customers, and which prescribes the mode in which such merchants shall distribute and redeem such stamps or coupons, and which mode does not conform to the uses permitted by the statute, is engaged in a business governed by the trading-stamp act, and when such business is undertaken without a license such company is guilty of a misdemeanor." (Syl. ¶ 6.)

Our conclusion is that the trial court erred in holding that the information did not state an offense and in discharging the defendant. This requires that the judgment of the trial court be reversed for further proceedings in harmony with this opinion. It is so ordered.